IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| VADILAL INDUSTRIES USA, INC., *et al.*, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 25-cv-2028-LKG ) |
| v. | ) Dated: August 14, 2025 ) |
| SINGH TRADING CO. INC. d/b/a ROSHNI FOODS, | ) ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| VADILAL DAIRY INTERNATIONAL, LTD., | ) ) ) |
| Defendant-Intervenor. | ) ) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this trademark infringement action, the Plaintiffs, Vadilal Industries USA, Inc. ("Vadilal USA") and Vadilal International Private Limited ("Vadilal India") (collectively, "Vadilal"), allege that the Defendant, Singh Trading Co. Inc. d/b/a Roshni Food ("Singh"), has infringed on their rights in the trademark, VADILAL QUICK TREAT (the "Mark"), in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Maryland common law. *See generally* ECF No. 1. The Plaintiffs have filed a motion for a temporary restraining order and a preliminary injunction, pursuant to Fed. R. Civ. P. 65, seeking to enjoin Defendant Singh from infringing on the Mark, using the Mark and/or using any trademark that is "confusingly similar to or colorable imitation" of the Mark. ECF Nos. 12 and 12-1. The proposed Defendant-Intervenor, Vadilal Dairy International, Ltd. ("VDIL"), has also moved to intervene as a Defendant in this matter, pursuant to Fed. R. Civ. P. 24 (a)(2) and (b). ECF No. 17. In addition, VDIL has moved to dismiss the complaint for forum non-conveniens, pursuant to Fed R Civ P. 12(b)(3). ECF No. 18. These motions are fully briefed. *See* ECF Nos. 12, 17, 18, 22, 28, 29, 30, 33, 34 and 35. The Court held a hearing on these motions on August 11, 2025. ECF No. 39. For the reasons

1

that follow, and for those stated during the August 11, 2025, hearing, the Court: (1) **GRANTS** VDIL's motion to intervene (ECF No. 17); (2) **GRANTS-in-PART and DENIES-in-PART** VDIL's motion to dismiss for forum non-conveniens (ECF No. 18); (3) **DENIES** the Plaintiffs' motion for a temporary restraining order and a preliminary injunction **WITHOUT PREJUDICE** (ECF No. 12); and (4) **STAYS** the proceedings in this matter **until November 10, 2025**, so that the parties may participate in arbitration.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

<u>The Parties</u>

Plaintiff Vadilal USA is a New Jersey corporation with its principal place of business located in Bristol, Pennsylvania.  ECF No. 1 at ¶ 7.

Plaintiff Vadilal India is a corporation organized under the laws of the Republic of India with its principal place of business located in Gujarat, India.  *Id.* at ¶ 8.

Defendant Singh is Maryland corporation with its principal place of business located in Laurel, Maryland.  *Id.* at ¶ 9.

<u>Overview Of The Case</u>

Vadilal, together with its predecessors-in-interest, have operated in India for more than 100 years, and the company is well-known for its frozen products sold under the Vadilal brand. ECF No. 12-3 at ¶ 3 (Jhawar Decl.).  In 2009, Vadilal USA was launched to deliver authentic Indian frozen foods and ice creams to the Indian diaspora across North America.  *Id.* at ¶ 4 .

Vadilal India owns U.S. trademark registrations for the Mark and associated designs, including U.S. Trademark Registration Nos. 5,738,657, 7,142,657, and 7,142,658, all covering various food products in International Classes 29 and 30.  ECF No. 12-7 at ¶ 2 (Siegel Decl.); ECF No. 12-8.  Vadilal USA markets its products under the Mark under license from Vadilal India to its parent company, Vadilal Industries, Ltd., and with the authorization of Vadilal India. ECF No. 12-3 at ¶ 5.

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the exhibits to the Plaintiffs' motion for a temporary restraining order and preliminary injunction, VDIL's motion to intervene, VDIL's motion to dismiss, the memorandum in support thereof, and the exhibits attached thereto.  ECF Nos. 1, 12-3, 12-5, 12-7, 12-8, 12-9, 12-10, 17 18 and 18-1.

Vadilal USA offers more than seven hundred different stock keeping units under the VADILAL QUICK TREAT brand, including ice creams, frozen foods, snacks, and ready-to-eat meals. *Id.* at ¶ 6. Vadilal USA promotes the Mark and products under that brand *via* national marketing campaigns on digital media, targeted television networks, and point-of-sale promotions. *Id.* at ¶ 7. As a result of Vadilal USA's promotion, advertising, and broad catalog of products, VADILAL QUICK TREAT is the top-selling Indian ice cream brand in America, with annual sales in excess of 40 million dollars. *Id.* at ¶ 8.

Early in its operations in the United States, Vadilal USA sold its products through regional distributors, but later the company moved to a nationwide direct distribution network through which it reaches thousands of retailers. *Id.* at ¶ 9. From approximately 2013 through 2015, Defendant Singh was an authorized distributor of VADILAL QUICK TREAT brand frozen foods, including vegetables, breads, and snacks, in the Maryland and Virginia region. *Id.* at ¶ 10. As distributor, Defendant Singh sold those products under the VADILAL QUICK TREAT brand and was aware of the consumer response to the VADILAL QUICK TREAT brand and related products. *Id.* at ¶ 11. In 2015, Vadilal USA terminated its relationship with Defendant Singh. *Id.* at ¶ 12.

Since then, VDIL contracted with Defendant Singh to sell its ice cream products in the United States market. ECF No. 17 at 7. The sales in the United States recently began in June 2025. *Id.* VDIL contends that it is solely responsible for any damages emanating from the sales of its ice cream products in the United States. *Id.*

The Plaintiffs contend that, in or about early June 2025, Vadilal USA began to be contacted by retailers regarding a new line of ice cream and frozen desserts marketed under the mark, VADILAL DAIRI RICH, and distributed by Defendant Singh. ECF No. 12-3 at ¶ 13. The Plaintiffs also contend that they have obtained a sales flyer promoting the VADILAL DAIRI RICH Mark for sale in the United States. *Id*. at ¶ 15; ECF No. 12-5. And so, the Plaintiffs contend that Defendant Singh's use of the VADILAL DAIRI RICH Mark has caused "considerable confusion in the marketplace, including among large and small retailers, as to whether Vadilal USA is associated with [VADILAL DAIRI RICH Mark] and whether the products distributed by [Defendant Singh] under that brand are Vadilal USA products." ECF No. 12-3 at ¶17.

The Plaintiffs also contend that the offering for sale of their USA products alongside products bearing the VADILAL DAIRI RICH Mark is likely to create confusion among consumers. *See* ECF No. 12-10 at ¶ 8 (Gandhi Decl.). And so, counsel for Vadilal sent a demand letter to Defendant Singh demanding that it cease use of the VADILAL DAIRI RICH Mark on June 20, 2025. ECF No. 12-7 at ¶ 3; ECF No. 12-9.

<u>The Four Agreements</u>

In 1993, family members of the late Mr. Randhhodlal V. Gandhi entered into four agreements that split the family-owned ice cream business in India and permitted the parties to enter non-domestic markets, such as the United States, to sell and market their products. ECF No. 18 at 7; ECF No. 18-1 at 5-72. The four agreements are the First Memorandum of Agreement ("MOA"), dated March 30, 1993; (2) the Second MOA, dated March 30, 1993; (3) the Registered User Agreement, dated March 30, 1993; and (4) the General Power of Attorney, dated March 30, 1993. ECF No. 18-1 at 5-72.

Section 4 of the Second MOA is entitled, "Ice cream and New Products-- Overseas," and provides, in relevant part that:

> 4.1  Overseas territory except for restricted goods as discussed in "3-New Products and Captive Consumption" is open to both the parties.
>
> 4.2  For the above, both the groups could use a new brand name without Vadilal or use a double branded name identifying each group as per Clause 3.2 above.
>
> It is further agreed that additional Double branded logo be allowed to be developed by each group, at the option of that group.  If, however, such special double branded logo is opted to be used by any group then another double branded logo should not be used in the overseas.  That is, only one Double branded logo should be used by each group in the overseas territory. . . .

*Id.* at 39.

In addition, Section 10.1 of the First MOA addresses arbitration and provides, in relevant part, that:

> This MOU and other Understandings and the agreements that may be executed on the basis of these understandings are subject to arbitration as per the Indian Arbitration Act, 1940. In the event of any dispute arising between the parties or in relation to the construction or interpretation of the agreement or such other Memorandum of Understandings, the same shall be referred to a

4

> sole arbitrator, if parties agree upon such sole Arbitrator, failing which each party may depute/nominate their arbitrator who in turn will appoint an Umpire. The arbitration proceedings are subject to the jurisdiction of the Territory of the party other than who has necessitated the Arbitration Proceedings.

ECF No. 18-1 at 21.

<div align="center">The Plaintiffs' Allegations</div>

The Plaintiffs allege that Defendant Singh is infringing upon their rights in the Mark by distributing ice cream bearing the name VALIDAL DAIRI RICH, in violation of the Lanham Act and Maryland law. ECF No. 1. And so, the Plaintiffs request, among other things, that the Court preliminarily and permanently enjoin Defendant Singh from infringing on the Vadilal Mark, using the Vadilal Mark and/or using any trademark that is "confusingly similar to or colorable imitation" of the Vadilal Mark. *Id.* at Prayer for Relief.

### B. Procedural History

The Plaintiffs commenced this trademark infringement matter on June 24, 2025. ECF No. 1. On July 3, 2025, the Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction, pursuant to Fed. R. Civ. P. 65. ECF No. 12. On July 7, 2025, VDIL filed a motion to intervene as a Defendant in this matter, pursuant to Fed. R. Civ. P. 24, and a motion to dismiss for forum non-conveniens. ECF Nos. 17 and 18.

On July 24, 2025, Defendant Singh filed a response in opposition to the Plaintiffs' motion for a temporary restraining order and a preliminary injunction. ECF No. 28. On July 24, 2025, the Plaintiffs filed responses in opposition to VDIL's motions to intervene and to dismiss. ECF Nos. 29 and 30. On July 28, 2025, the parties filed reply briefs in support of their respective motions. ECF Nos. 33, 34 and 25. The Court held a hearing on the parties' motions on August 11, 2025. ECF No. 39.

These motions having been fully briefed, the Court resolves the pending motions.

### III.   LEGAL STANDARDS

### A. Fed. R. Civ. P. 24

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right and provides, in relevant part, that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent

that interest." Fed. R. Civ. P. 24(a)(2).  When determining whether a party has a right to intervene under Rule 24(a)(2), the Court considers four factors: (1) whether the application to intervene in a pending action is timely; (2) whether the putative intervenor has an interest in the action; (3) whether the action threatens to impair or impede the intervenor's ability to protect its interest; and (4) whether no existing party to the action may adequately represent the putative intervenor's interests.  *Hou. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1986).  This four-part test is to be applied liberally.  *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

  **B.  The Forum Non-Conveniens Doctrine**

  The Supreme Court has held that the "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Const. Co. v. U.S. Distr. Ct. for the W. Dist. of Tx.*, 571 U.S. 49, 60 (2013).  In this regard, the Court "should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61. And so, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied."[2] *Id*. at 62 (internal citation omitted).

  The Supreme Court has also held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways."  *Id.* at 63.  First, "the plaintiff's choice of forum merits no weight."  *Id.*  Rather, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* Second, the Court "should not consider arguments about the parties' private interests." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest

---

[2] Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Fed. R. Civ. P. 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3).  But, the question of "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)" for which venue in a district court is proper.  *Atl. Marine Const. Co. v. U.S. Distr. Ct. for the W. Dist. of Tx.*, 571 U.S. 49, 56 (2013).  And so, "a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.*

6

considerations." *Id.* And so:

> When parties have contracted in advance to litigate disputes in a particular forum, [the Court] should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id.* at 66.

### C. Fed. R. Civ. P. 65

To obtain either a temporary restraining order, or a preliminary injunction, the party seeking the relief must show that: (1) there is a likelihood of success on the merits; (2) there is a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Maags Auditorium v. Prince George's County*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014) ("The standard for a temporary restraining order is the same as a preliminary injunction."), *aff'd*, 681 F. App'x 256 (4th Cir. 2017); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). When the Government is the opposing party, the balance of equities and public interest prongs merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction cannot issue unless all of these factors are satisfied. *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). And so, the Court may issue a temporary restraining order or preliminary injunction to protect the status quo, or to return the parties to the "last uncontested status between the parties which preceded the controversy," *League of Women Voters of N.C.*, 769 F.3d at 236, so that the Court has time to "render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).

### D. Contract Interpretation

Lastly, the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *See Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (internal quotations omitted). When interpreting contract language, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in

7

which it is used." *Chaplick for Canal Vista Tr. v. Jeng Fen Mao*, 215 F. Supp. 3d 470, 479 (D. Md. 2016) (quoting *Sy–Lene of Wash.*, 829 A.2d at 546).

## IV.   ANALYSIS

VDIL has filed a motion to intervene as a Defendant in this matter, pursuant to Fed. R. Civ. P. 24, upon the grounds that: (1) it is entitled to intervene as a matter of right, because VDIL has a legally protected interest in this litigation, VDIL's interests would be impeded as a practical matter if the Plaintiffs prevail and Defendant Singh does not adequately represent VDIL's interests and (2) it should, in the alternative, be granted permission to intervene. ECF No. 17 at 9-10. VDIL has also moved to dismiss the case for forum non-conveniens, pursuant to Fed. R. Civ. P. 12(b)(3), because there is a valid forum-selection clause between the Plaintiffs and VDIL, which mandates the dismissal of the complaint. ECF No. 18 at 9-12. And so, VDIL requests that the Court grant its motion to intervene and dismiss the complaint for forum non-conveniens. ECF No. 17 at 10; ECF No. 18 at 12.

The Plaintiffs counter that the Court should deny VDIL's motion to intervene, because: (1) VDIL is not entitled to intervene as a matter of right; and (2) permissive intervention would complicate and delay the litigation of this case. ECF No. 29 at 3-6. The Plaintiffs also argue that the Court should not dismiss this matter, because: (1) the Plaintiffs' claims against Defendant Singh are not subject to the arbitration clause; (2) *Atlantic Marine* is not applicable to this case; (3) the putative alternative forum in the arbitration clause no longer exists; and (4) retaining this action in this Court would serve the public interest. ECF No. 30 at 2-7. And so, the Plaintiffs request that the Court deny VDIL's motions to intervene and to dismiss. ECF No. 29 at 7; ECF No. 30 at 7.

The Plaintiffs have also moved for a temporary restraining order and a preliminary injunction, pursuant to Fed. R. Civ. P. 65, upon the following grounds: (1) they are likely to prevail on their claims for trademark infringement and unfair competition arising out of Defendant Singh's unauthorized use of the Mark; (2) they will suffer irreparable harm from Defendant Singh's unauthorized use of the Mark; (3) the balance of equities favors granting their motion; and (4) it is in the public interest to grant the requested injunctive relief. ECF No. 12-1 at 5-15. And so, the Plaintiffs request that the Court grant their motion and preliminarily and permanently enjoin Defendant Singh from infringing on the Mark. *Id.* at 15; *see also* ECF No. 12-1; ECF No. 1 at Prayer for Relief.

Defendant Singh and VDIL jointly oppose the Plaintiffs' motion for emergency injunctive relief upon the grounds that: (1) the Plaintiffs are not likely to succeed upon the merits of their trademark infringement claims, because VDIL has a legal right to use the Mark. ECF No. 28 at 6-9. And so, Defendant Singh and VDIL request that the Court deny the Plaintiffs' motion. *Id.* at 10.

For the reasons that follow, VDIL has shown that it has a right to intervene in this matter, pursuant to Fed. R. Civ. P. 24(a). VDIL has also shown that the parties have entered into a valid arbitration and forum-selection clause that mandates that the Plaintiffs arbitrate the claims in this case in India. And so, the Court: (1) GRANTS VDIL's motion to intervene (ECF No. 17); (2) GRANTS-in-PART and DENIES-in-PART VDIL's motion to dismiss for forum non-conveniens (ECF No. 18); (3) DENIES the Plaintiffs' motion for a temporary restraining order and a preliminary injunction WITHOUT PREJUDICE (ECF No. 12); and (4) **STAYS** the proceedings in this matter until November 10, 2025, so that the parties may participate in arbitration.

### A. VDIL May Intervene In This Matter

As an initial matter, VDIL has shown that it has a right to intervene as a Defendant in this trademark infringement dispute, pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right and provides, in relevant part, that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2). When determining whether VDIL has a right to intervene in this case, pursuant to Rule 24(a)(2), the Court considers four factors: (1) whether VDIL's application to intervene is timely; (2) whether VDIL has an interest in this case; (3) whether this trademark infringement action threatens to impair or impede VDIL's ability to protect its interest; and (4) whether no existing party to the case may adequately represent VDIL's interests. *Hou. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1986). The Court applies this test liberally. *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

In this case, VDIL persuasively argues that the above four factors show that it has a right to intervene in this trademark infringe dispute. See ECF No. 17 at 9-10. First, there can be no genuine dispute that VDIL's motion to intervene is timely. The Plaintiffs commenced this

9

matter on June 24, 2025, and VDIL filed a motion to intervene on July 7, 2025, less than two weeks thereafter. ECF Nos. 1, 11 and 17.

Second, VDIL has shown that it has a legally protected interest in this trademark infringement dispute, because it manufactures the ice cream product at issue in this case and Defendant Singh is the distributor of this product in the United States. ECF No. 17 at 7. VDIL, unlike Defendant Singh, is also a party to the four agreements that are at the center of this trademark infringement dispute. Given this, only VDIL can assert claims and defenses arising under those agreements related to the Mark. *See* ECF No. 18-1 at 5-72; *see also* ECF No. 28-7 at 1 (showing change of name from Super Milk Makers Pvt. Ltd. to Vadilal Dairy International Limited).

Third, the Court is satisfied that VDIL's interests would be impeded, if the Plaintiffs prevailed in this litigation, because VDIL would no longer be able to market and sell its ice cream product using the Vadilal Mark within the United States.

Lastly, for this reason, the Court is also satisfied that VDIL can only protect its interest by intervening in this litigation and directly raising its defenses to the Plaintiffs' trademark infringement claims against Defendant Singh. And so, the Court GRANTS VDIL's motion to intervene.[3] Fed. R. Civ. P. 24(a).

### B. The Parties Agreed To Arbitrate The Plaintiff's Infringement Claims In India

Having determined that VDIL may intervene in this matter as a Defendant-Intervenor, the Court is also satisfied that the complaint should be dismissed for forum non-conveniens, because VDIL and the Plaintiffs have entered into a valid arbitration and forum-selection agreement that requires that the Plaintiffs pursue their trademark infringement claims in arbitration in India.

The Supreme Court has held that the "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Distr. Ct. for the W. Dist. of Tx.*, 571 U.S. 49, 60 (2013). The Court "should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that

---

[3] VDIL has also shown that permissive intervention is appropriate under Fed. R. Civ P 24(b), because (1) its defense and the main action have common questions of law or fact and (2) the intervention will not unduly delay or prejudice the adjudication of this case, given its timely motion to intervene. Fed. R. Civ. P. 24(b)(1)(B). In addition, VDIL has shown that it has standing to be a party to this dispute, because a ruling in the Plaintiffs' favor would require VDIL to cease using the Vadilal Mark on its ice cream products in the United States.

10

they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61. And so, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied."[4] *Id.* at 62 (internal citation omitted).

In this regard, the Supreme Court has held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. First, "the plaintiff's choice of forum merits no weight." *Id.* Rather, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the Court "should not consider arguments about the parties' private interests." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* And so:

> When parties have contracted in advance to litigate disputes in a particular forum, [the Court] should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id.* at 66.

In this case, a plain reading of Section 10.1 of the First MOA shows that the parties have agreed to arbitrate this dispute in India. In this regard, Section 10.1 provides that:

> This MOU and other Understandings and the agreements that may be executed on the basis of these understandings are subject to

---

[4] Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Fed. R. Civ. P. 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). But, the question of "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)" for which venue in a district court is proper. *Atl. Marine Const. Co. v. U.S. Distr. Ct. for the W. Dist. of Tx.*, 571 U.S. 49, 56 (2013). And so, "a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.*

> arbitration as per the Indian Arbitration Act, 1940. In the event of any dispute arising between the parties or in relation to the construction or interpretation of the agreement or such other Memorandum of Understandings, the same shall be referred to a sole arbitrator, if parties agree upon such sole Arbitrator, failing which each party may depute/nominate their arbitrator who in turn will appoint an Umpire. The arbitration proceedings are subject to the jurisdiction of the Territory of the party other than who has necessitated the Arbitration Proceedings.

ECF No. 18-1 at 21.  The Court reads this language to require that the Plaintiffs arbitrate their claims in India for several reasons.

 First, there is no dispute that Plaintiff Vadilal India and VDIL, as the successor-in-interest to Super Milk Makers Pvt., Ltd., are parties to the Registered User Agreement and that the Registered User Agreement is one of the four agreements covered by the above arbitration and forum-selection clause.  *See* ECF No. 18-1 at 45.  Notably, Section 10.1 makes clear that "[t]his MOU and other Understandings and the agreements that may be executed on the basis of these understandings are subject to arbitration as per the Indian Arbitration Act . . . ."  *Id.* at 21.  And so, the Court reads this language to require that matters arising from, or related to, the Registered User Agreement are subject to arbitration.

 Second, the Court also reads Section 10.1 to cover the trademark infringement claims in this case.  Notably, this provision provides that "[in] the event of *any dispute arising between the parties or in relation to the construction or interpretation of the agreement* or such other Memorandum of Understandings, *the same shall be referred to a sole arbitrator*."  *Id.* (emphasis added).  This language makes clear that arbitration is mandatory for "any disputes" arising between the parties to the four agreements, which would, at a minimum, include Plaintiff Vadilal India and VDIL, and also for any disputes "*in relation to the construction or interpretation of the agreement*."  *See id.* (emphasis added).  Given this, the Court reads the arbitration and forum-selection clause to also cover disputes related to the construction or interpretation of the four agreements that do not involve the parties to those agreements.  And so, the trademark infringement claims in this case necessarily fall within the scope of the arbitration and forum-selection provision.

 In addition, the plain language of the arbitration and forum-selection provision makes clear that the parties to that agreement agreed to, and specified, the forum in which they would resolve their disputes.  In this regard, Section 10.1 provides that "[t]his MOU and other

12

Understandings and the agreements . . . are subject to arbitration as per the Indian Arbitration Act" and that "[t]he arbitration proceedings are subject to the jurisdiction of the Territory of the party other than who has necessitated the Arbitration proceedings." *Id.* The Court reads this language to specify that arbitration must be held in India and that the specific forum of the arbitration will be in the location in India where the party opposing the claims has its territory. In this regard, it is undisputed that the Plaintiffs' territory is located in Gujarat, India and that VDIL's territory is located in Maharashtra, India. ECF No. 1 at ¶ 8; ECF No. 34 at 6. And so, the forum that the parties have selected for the arbitration in this case is located in Maharashtra, India. *See* ECF No. 18-1 at 21; ECF No. 34 at 6.

Lastly, the Court observes that the Plaintiffs' arguments to show that the forum non-conveniens doctrine should not apply to this case are also unpersuasive. The Plaintiffs first argue that their claims against Defendant Singh are not subject to arbitration, because Defendant Singh is not a party to the four agreements, and the arbitration and forum-selection clause. ECF No. 30 at 2-3. But, as discussed above, the Court reads the arbitration and forum-selection clause to cover "any disputes . . . *in relation to the construction or interpretation of [the four agreements*." ECF No. 18-1 at 21 (emphasis added). Given this, the arbitration and forum-selection clause applies to the Plaintiffs' trademark infringement claims against Defendant Singh, because these claims relate to the four agreements.

Second, the Plaintiffs argue that Section 10.1 is not a forum-selection clause. ECF No. 30 at 4. But, as discussed above, the plain language of Section 10.1 specifies that the arbitration must be held in India and how the parties will determine the specific location in India for the arbitration.

Third, the Plaintiffs argue that they are not required to arbitrate their claims, because the forums in India are no longer available, and the Indian Arbitration Act, 1940 has been repealed. *Id.* at 6. But, as VDIL correctly observes, the change in the law has no impact on the availability of the forum selected by the parties. See ECF No. 34 at 7. And so, this argument also lacks merit.

The Court also observes as a final matter that the Plaintiffs have not shown that the public interest favors litigating this dispute in the District of Maryland. While the Plaintiffs argue with persuasion that there is a public interest in addressing the alleged trademark infringement, and any resulting confusion of Maryland consumers, in this district, that interest is outweighed by

13

other considerations, such as the need to consistently and uniformly interpret the four agreements, to apply Indian contract law in this case, and to avoid piecemeal litigation of the parties' claims and defenses.

And so, for these reasons, the Court GRANTS-in-PART VDIL's motion to dismiss for forum-non conveniens, so that the parties may arbitrate this trademark dispute in India.

### C. The Plaintiffs Have Not Shown A Likelihood Of Success

Because the Court concludes that the parties must arbitrate this dispute in India, the Court must decline to consider and grant the Plaintiffs' request for emergency injunctive relief. To prevail on their motion for a temporary restraining order and a preliminary injunction, the Plaintiffs must show, among other things, a likelihood of success upon the merits of their claim. As discussed above, the Plaintiffs cannot prevail on their trademark infringement claims in this forum, because they have agreed to arbitrate those claims in India. And so, the Court must DENY the Plaintiffs' motion for a temporary restraining order and a preliminary injunction. *See* Fed. R Civ. P. 65.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** VDIL's motion to intervene (ECF No. 17);

(2) **GRANTS-in-PART and DENIES-in-PART** VDIL's motion to dismiss for forum non-conveniens (ECF No. 18);

(3) **DENIES** the Plaintiffs' motion for a temporary restraining order and a preliminary injunction **WITHOUT PREJUDICE** (ECF No. 12); and

(4) **STAYS** the proceedings in this matter **until November 10, 2025**, so that the parties may participate in arbitration.

The Court issued a separate Order consistent with this memorandum opinion on August 11, 2025 (ECF No. 40).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge